## MATTER OF LASHKEVICH

### In Visa Petition Proceedings

#### A-14708690

*Decided by Board December 20, 1966*

Where beneficiary's status is evidenced as "single" by an official document (Rectification of Civil Record) issued by the Government of Chile, the country of her residence and nationality; the Chilean Consul has stated that such document is legal proof of the civil status of beneficiary in Chile; and this finding by the Chilean authorities has not been controverted, such document constitutes proof of the "unmarried" status of beneficiary for the purpose of according her preference classification under section 203(a)(2) of the Immigration and Nationality Act, as amended by P.L. 89-236.

ON BEHALF OF PETITIONER: Ralph L. Baker, Esquire
1217 Central Building
Oakland, California 94612
(Brief filed)

The case comes forward on appeal from the order of the District Director, San Francisco District, dated September 19, 1966 denying the visa petition for the reason that the divorce obtained by the beneficiary is invalid and consequently the approval of the visa petition on her behalf as the unmarried child of an alien lawfully admitted to the United States for permanent residence was erroneous, and such approval is therefore revoked.

The petitioner, a native of Russia, a lawful permanent resident of the United States, 70 years old, male, seeks preference status under section 203(a)(2) of the Immigration and Nationality Act on behalf of the beneficiary as his unmarried daughter. The visa petition, filed June 28, 1965, states that the beneficiary was divorced.

The visa petition was supported by a certificate of identification from the Chilean Central Office of Identification indicating that the beneficiary was single. There was also submitted a certificate issued by the Synod of Bishops of the Russian Orthodox Church Outside of Russia at New York, New York certifying that by decision of the Synod of Bishops of that organization dated March 25, 1965 and becoming valid since May 15, 1965, the first religious marriage of

22

Michael A. Lashkevich with Valentina N. Lashkevich is dissolved on the request of the wife, the defendant, Michael A. Lashkevich being found guilty of maliciously abandoning his wife. This certificate further states that the plaintiff, Mrs. Valentina N. Lashkevich nee Zdanoff, according to that decision has the right to contract a new marriage. This certificate is signed by the President of the Synod of Bishops and the Chancellor to the Synod of Bishops and notarized.

A memorandum dated November 9, 1965 by an immigrant inspector is contained in the file and indicates that the petitioner appeared at the office and submitted the certificate of dissolution of marriage issued by the Synod of Bishops of the Russian Orthodox Church Outside of Russia and a certificate issued by the Secretary of the Central Office of Identification authenticated by the Ministry of Justice of Chile wherein it states that the civil status of the beneficiary, Valentina Idanova Schegaleva, is single. The immigrant inspector phoned the Consulate General of Chile at San Francisco and discussed the certificate. He was told there was no divorce in the laws of Chile but there were laws in which annulment of marriage was permitted. He was further informed that the certificate issued by the Central Office of Identification was a legal document and the statement of single civil status was legal and binding, and according to the laws of Chile, the beneficiary is a single person.

The file reflects that a copy of the certificate of the Synod of Bishops of the Russian Orthodox Church Outside of Russia was submitted to the Library of Congress, File and Law Section, for an opinion as to its validity as a legal termination of the beneficiary's prior marriage but due to a lack of specific provisions on religious divorce in the Chilean code or statutes, and despite a thorough search through legislation, cases and other types of legal literature, no statement or opinion was discovered which might evidence Chile's attitude toward the securing of religious divorce, whether at home or abroad.

The visa petition was approved on July 22, 1965 with the notation that the validity of the beneficiary's divorce was not known. On January 17, 1966 the petitioner was informed that the American Consulate in Santiago, Chile had returned the visa petition requesting clarification as to the validity of the divorce obtained by the beneficiary through the Synod of Bishops of the Russian Orthodox Church Outside of Russia. The District Director stated that it had now been determined that in accordance with the Civil Code of Chile, the divorce obtained by the beneficiary was invalid and consequently the approval of the visa petition as the unmarried daughter of the petitioner was erroneous. The determination of the invalidity of the divorce was apparently based upon the memorandum of the Library of

Congress which, as we have previously noted, expressed no firm resolution of the problem. However, on February 9, 1966 the petitioner was given notice of the revocation of the visa petition on the ground that the divorce obtained by the beneficiary was invalid and the prior approval of the visa petition as the unmarried child of the petitioner was erroneous.

On appeal to this Board there was submitted a document in the Spanish language together with translation entitled "Rectification of Civil Record" dated November 2, 1965 referring to Valentina Idanova Schegaleva and signed by the Substituting Director General of the Civil Registry and Identification, Santiago, Chile. This document requested a rectification of the beneficiary's civil record to establish that her civil status was single and not married to Miguel Lashkevich Kalenena as is indicated in that record; that she enclosed an authorized copy of the inquiry for perpetual memory rendered at the Second Court of Justice in Civil Matters of High Degree of Santiago approved by that tribunal and dated June 11, 1964 which verifies that witnesses of the inquiry affirmed that the petitioner was never married to Miguel Lashkevich Kalenena; that in the affiliation extract it is expressed that the bearer's civil status is that of married to Miguel Lashkevich, a civil status which is not enforced by any document, and neither is there any record of the supposed marriage of the said persons; that in the affiliation extract of Miguel Lashkevich Kalenena the latter's civil status is that of married to Valentina Idanova Schegaleva, a civil status which is not enforced by any document and neither is there any record of the supposed marriage of said persons; that Valentina Idanova Schegaleva expressly recorded that she ignores the present whereabouts of Miguel Laskevich Kelenena since he was only an immigration companion and has lost sight of him; that the married status was not verified with the legal means of proving established by articles 305, 209 and following of the Civil Code and neither was the supposed marriage of the said persons proven which is a previous condition to establish the civil status of married; and that for these various reasons the rectification according to law has been petitioned. The Chief of the Central Bureau of Identification was ordered to proceed to rectify the civil record corresponding to the beneficiary in the sense of establishing that the civil status of the latter is that of single and not married to Miguel Lashkevich Kalenena as it is erroneously expressed there. The aforementioned Chief likewise ordered that an identity document be issued to the beneficiary in accordance with the civil status previously mentioned. This document is signed by the Substituting Director General of the Civil Registry and Identification.

In considering the appeal, this Board on March 11, 1966 took notice

24

of the rectification of civil record and remanded the case for the purpose of introducing the evidence submitted on appeal in the record for consideration of the District Director. The document was referred to the Library of Congress for an opinion. By letter dated May 25, 1966 the Library of Congress stated that up until 1942 the Identification Service was a dependency of the Department of Justice, maintaining records on aliens and other investigations, from which information and identity cards were issued as required. The Civil Registry operating as a vital statistics office, maintained records on Chilean nationals and in 1942 the similar services were fused for administrative purposes in a single department known as the General Bureau of Civil Registry and Identification. The record which was ordered to be rectified in this case was apparently one of information on identification of aliens, and not one of civil status. However, the procedure for such corrections in the absence of documentation or "best evidence," is apparently the same in either case, through a self-serving court action known as *Información para Perpetua Memoria* or depositions *ad perpetuam rei memoria*. This procedure is detailed in article 909–914 of the Code of Civil Procedure. In this case the decree ordered a correction only in the petitioner's record but did not affect the same information contained in that of her presumed husband. In this case the court found the statements in the petitioner's and her presumed husband's identification records or cards which bear consecutive numbers not to be true insofar as concerned their status as being married to each other. The court found that no legal evidence, as required by the Civil Code in the form of a certificate of marriage or other documentation, was either noted or attached to support the statements made in these records. The witnesses offered corroborating evidence to the effect that the man was only a "travelling or immigration companion" entering Chile with the petitioner, but not married to her.

The District Director ordered revocation for the reason that the divorce obtained by the beneficiary was invalid and consequently the approval of the visa petition as the unmarried child of an alien lawfully admitted to the United States for permanent residence was erroneous. It is noted that the notice of revocation makes no reference to the Rectification of a Civil Record which was submitted on appeal and was remanded for consideration by the District Director.

While we have accorded recognition to divorces which involved persons who were neither residents nor domiciliaries of the United States at the time of such divorce,[1] we find it unnecessary to rest our decision upon the religious divorce obtained by the beneficiary

[1] *Matter of B—*, 1 I. & N. Dec. 677; *Matter of A—*, 6 I. & N. Dec. 272; *Matter of Faruque*, 10 I. & N. Dec. 561.

which involves a native of Manchuria, China, a naturalized citizen of Chile, and which presents problems of conflicts of law so involved as to defy resolution by the Library of Congress. We think, however, the case may be decided upon the basis of the rectification of the civil record showing the beneficiary's civil status to be that of single and not married. The memorandum from the Library of Congress dated May 15, 1966 sets forth that the court named in the rectification of civil record found no legal evidence of marriage, as required by the Civil Code, in the form of an attached or noted certificate of marriage or other documentation. In addition, the witnesses offered corroborating evidence to the effect that the man was only a travelling or immigration companion entering Chile with the petitioner but not married to her. The memorandum by the immigrant inspector dated November 9, 1965, contained in the file, contains information from the Consulate General of Chile at San Francisco that the certificate issued by the Central Office of Identification was a legal document and that the statement of single status was legal and binding and according to the laws of Chile the beneficiary was a single person.[2]

The petitioner, a permanent lawful resident, seeks preference quota status on behalf of the beneficiary as his unmarried daughter. The plain congressional purpose in providing preferential status for entry of immigrants closely related to American citizens was to facilitate and foster the maintenance of families, such as here involved. Consistent with that purpose it has been held reasonable to believe that the Congress intended that the marriage of a citizen, valid where contracted, be accorded validity for immigration purposes.[3] As a necessary corollary to that same purpose, the civil status of a person, determined in accordance with the laws of the country of which she is a national and in which she resided, and who has no United States residence or domicile, should, on the basis of comity, be accorded recognition of the civil status accorded to her by the laws of such country.

In the instant case the beneficiary has produced evidence that Chile, the country of her nationality and residence, regards her civil status as that of a single person. This finding by the Chilean authorities has not been controverted. Accordingly, the beneficiary is to be regarded as an unmarried child. The appeal will be sustained.

ORDER: It is ordered that the appeal from the revocation of the visa petition granting preference status under section 203(a)(2) of the Immigration and Nationality Act be and the same is hereby sustained.

---

[2] This information has been informally corroborated by the legal advisor of the Embassy of Chile at Washington, D.C.

[3] *Matter of P—*, 4 I. & N. Dec. 610, 614 (Actg. A.G. 1952).